# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ROMERO HERNANDEZ,<br><br>    Plaintiff,<br>  vs.<br><br>SAMAD ATTISHA; and YVONNE ATTISHA,<br><br>    Defendants. | CASE NO. 09-CV-2257 - IEG (WMC)<br><br>ORDER DENYING MOTION TO DISMISS<br><br>[Doc. No. 7] |

Currently before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the second, third, fifth, sixth, and seventh causes of action in Plaintiff's First Amended Complaint. [Doc. No. 7]. Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** the motion to dismiss.

## BACKGROUND

**I.    Factual background**

Plaintiff is a Mexican citizen certified by the U.S. Department of Health and Human Services as a victim of human trafficking under Section 107(b) of the Trafficking Victims Protection Act of 2000 ("TVPA"). (FAC ¶ 1; see also Compl., Ex. A.) She alleges that from at least 2002, Defendants Samad and Yvonne Attisha began searching for a domestic servant through their secretary, Sonia, to serve in their house in San Diego County, California. Sonia allegedly told Plaintiff that she would be

1  paid $7 per hour to work as a babysitter for Defendants' infant daughter and that she would only be
2  responsible to work from 10 a.m. to 6 p.m. Although Plaintiff did not have a valid working visa,
3  Defendants promised they would "fix her papers." On or about May 18, 2002, Plaintiff entered the
4  United States and began working for Defendants.

5  Plaintiff alleges that from that time on until approximately July 23, 2008, she was forced to
6  act as a domestic servant to Defendants, performing all household chores and housekeeping duties.
7  Plaintiff made no income in her first year because Defendants took her salary to reimburse Sonia for
8  Plaintiff's transportation to the United States. Plaintiff alleges that during her time with Defendants,
9  she often worked up to 14.5 hours per day for less than California or Federal minimum wage, and that
10 she was subject to constant control of Defendants. Defendants confiscated Plaintiff's passport, made
11 clear to Plaintiff that she was not free to leave, and made her feel that she had to hide if any third
12 parties approached Defendants' residence.

13 The U.S. Immigration and Customs Enforcement officials rescued Plaintiff from Defendants
14 on July 23, 2008. Plaintiff was then certified by the U.S. Department of Health and Human Services
15 as a victim of human trafficking under Section 107(b) of the TVPA on September 30, 2008.
16 Defendants were subsequently investigated for their human trafficking activities.

17 **II.     Procedural history**

18 Plaintiff commenced this action on October 13, 2009, alleging seven causes of action against
19 Defendants. [Doc. No. 1]. On November 16, 2009, Plaintiff filed her First Amended Complaint
20 ("FAC"), which alleged eight causes of action against Defendants. [Doc. No. 3]. Defendants
21 subsequently filed the current Motion to Dismiss, and Plaintiff filed an opposition. [Doc. Nos. 7, 8].

22 **LEGAL STANDARD**

23 A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A
24 complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is
25 plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court may dismiss
26 a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts
27 under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780,
28 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting

all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

**DISCUSSION**

**I.   Is there a civil cause of action for violation of Sections 1584 and 1590?**

Plaintiff's second cause of action alleges involuntary servitude in violation of 18 U.S.C. § 1584.[1] (FAC ¶¶ 26-30.) Plaintiff's third cause of action alleges trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1590(a).[2] (Id. ¶¶ 31-33.) Defendants move to dismiss both causes of action because neither provides a basis for a private cause of action. According to Defendants, both statutes were enacted for *criminal* enforcement of the Thirteenth Amendment. Relying on Buchanan v. City of Bolivar, 99 F.3d 1352, 1357 (6th Cir. 1996), Defendants allege no private cause of action exists under Section 1584. Defendants make a similar argument with regard to Section 1590. In addition, relying on Craine v. Alexander, Defendants argue

---

[1] Section 1584(a) provides in full:

Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

[2] Section 1590(a) provides in full:

Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

the third cause of action fails because a claim for peonage requires an allegation of state action. See 756 F.2d 1070, 1074 (5th Cir. 1985) (concluding that plaintiffs proceedings under the Antipeonage Act, 42 U.S.C. § 1994, "must show some state responsibility for the abuse complained of").

Defendants, however, overlook Section 1595 that explicitly provides a private cause of action for violations of Chapter 77 of Title 18, which includes Sections 1584 and 1590. See 18 U.S.C. § 1595(a). Section 1595 is entitled "civil remedy" and provides in pertinent part:

> An individual who is a victim of a violation may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Id. When initially enacted, Section 1595 applied only to an individual who was "a victim of a violation of section 1589, 1590, or 1591 of this chapter." See 18 U.S.C. § 1595 (2006). This language, however, was amended by the Trafficking Victims Protection Reauthorization Act of 2008, which deleted the phrase "of section 1589, 1590, or 1591 of this chapter" after the words "victim of violation." Pub. L. No. 110-457, § 221, 122 Stat. 5044. By doing so, Congress in effect expanded the private right of action to any violation under Chapter 77 of Title 18, including violations of Sections 1584 and 1590.[3]

The cases relied upon by Defendants are inapposite. Although Defendants correctly assert that the Sixth Circuit in Buchanan, 99 F.3d at 1357, held that no private cause of action exists under Section 1584, that case was decided in 1996–twelve years before Section 1595 was amended to provide for a private right of action for a violation of Section 1584. Similarly, even though Defendants correctly argue that private causes of action typically cannot be inferred from criminal statutes, that is irrelevant where Congress expressly provides for a private cause of action. Finally, Defendants' reliance on Craine, 756 F.2d at 1074, is misplaced because unlike in that case, the statute here is not limited to violations of "acts, laws, resolutions, orders, regulations or usages;" rather, Section 1595

---

[3] See 45 AM. JUR. 2D *Involuntary Servitude and Peonage* § 20 (2009) ("One who is a victim of the crime of forced labor; trafficking with respect to peonage, slavery, involuntary servitude, or forced labor; or sex trafficking of children may bring a civil action against the perpetrator in a district court, and may recover damages, and reasonable attorney's fees." (citing 18 U.S.C. § 1595)); Kathleen Kim, *The Trafficked Worker as Private Attorney General: A Model for Enforcing the Civil Rights of Undocumented Workers*, 1 U. CHI. LEGAL F. 247, 282 (2009) ("After the 2008 amendments, any violation of a trafficking-related crime enumerated within Chapter 77 of Title 18 is grounds for civil relief . . . ." (citing 18 U.S.C. § 1595(a) (2003 & Supp. 2008))).

expressly authorizes civil recovery against any "perpetrator." <u>See</u> 18 U.S.C. § 1595(a).

Accordingly, because Plaintiff may bring a private right of action, the Court **DENIES** Defendants' motion to dismiss on this ground.

**II.     Are Plaintiff's claims pursuant to Sections 1584 and 1590 time-barred?**

Defendants next argue Plaintiff's claims under Sections 1584 and 1590 are time-barred. According to Defendants, because neither of the two statutes specifies a statute of limitations, the Court must borrow from the most analogous state action – false imprisonment under California law – which is subject to a one-year statute of limitations. <u>See</u> CAL. CIV. PROC. CODE § 340.

Defendants once again overlook Section 1595, which provides for a 10-year statute of limitations for any action brought under that section. <u>See</u> 18 U.S.C. § 1595(c) ("No action may be maintained under this section unless it is commenced not later than 10 years after the cause of action arose."). In the present case, Plaintiff brought her action on October 13, 2009–less than two years after she was rescued, and less than eight years after she was first transported to Defendants' home. Accordingly, because Plaintiff's claims under Sections 1584 and 1590 are not barred by the applicable statute of limitations, the Court **DENIES** Defendants' motion to dismiss on this ground as well.

**III.    Are Plaintiff's emotional distress claims time-barred?**

Plaintiff's fifth and sixth causes of action allege intentional and negligent infliction of emotional distress, respectively. (FAC ¶¶ 37-40, 41-45.) Defendants argue these claims are barred by a two-year statute of limitations under Section 335.1 of the California Code of Civil Procedure because Plaintiff's causes of action accrued in 2002 when she moved into Defendants' home.

Plaintiff makes two arguments in opposition to Defendants' motion to dismiss. First, Plaintiff suffered the emotional distress on a continuing basis through 2008, and therefore the causes of action did not accrue until Plaintiff was rescued in 2008. Second, the statute of limitations period should be equitably tolled because Defendants' actions prevented Plaintiff from bringing suit prior to her rescue.

   A.     <u>Accrual of Plaintiff's causes of action for emotional distress</u>

Defendants correctly state the general rule that "[i]n ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action." <u>Neel v. Magana, Olney, Levy, Cathcart & Gelfand</u>, 6 Cal. 3d 176, 187 (1971). However,

as an exception to the general rule, the "continuing tort doctrine" may delay accrual of the action, if the tort involves a continuing wrong, "until the date of the last injury or when the tortious actions cease." Pugliese v. Super. Ct., 146 Cal. App. 4th 1444, 1452 (2007). Under the continuing tort doctrine in California, liability may still attach to "unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 802 (2001). Moreover, in a claim for emotional distress, the severity of the emotional distress may be measured by "[b]oth the intensity and duration of the distress suffered." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970); see also Miller v. Fairchild Indus., Inc., 797 F.2d 727, 737 (9th Cir. 1986) (citing Fletcher for California's standards of emotional distress claims). When the conduct complained of is continuing in nature, the point at which it becomes sufficiently outrageous or severe, and whether it in fact continues, are questions of fact. Murphy v. Allstate Ins. Co., 83 Cal. App. 3d 38, 51 (1978).

Plaintiff alleges Defendants' conduct causing her emotional distress was "continuous and systematic." (FAC ¶¶ 38, 42.) Whether the conduct continued up to the point of Plaintiff's rescue from Defendants' house on July 23, 2008, and whether it constituted "sufficiently connected" conduct to previous incidents of alleged infliction of emotional distress are questions of fact that cannot be resolved at this stage of the proceedings. Accordingly, Plaintiff states claims for which it is plausible the causes of action accrued at the time of her rescue. This is sufficient to survive the motion to dismiss.

B.  Equitable tolling of statute of limitations

Claims for both intentional and negligent infliction of emotional distress are governed by a two-year statute of limitations.[4] See CAL. CIV. PROC. CODE § 335.1; Pugliese, 146 Cal. App. 4th at 1450 ("Causes of action for . . . intentional infliction of emotional distress are governed by the two-year statute of limitations set forth in Code of Civil Procedure section 335.1."). Although the California Code of Civil Procedure expressly provides for tolling under certain circumstances, none

---

[4]Section 335.1 provides that "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be brought within two years. CAL. CIV. PROC. CODE § 335.1.

of those sections is directly applicable here.[5]  Nonetheless, both federal and California state courts have recognized equitable tolling in cases where the plaintiff is unable to bring suit or exercise an available remedy.  See, e.g., Stoll v. Runyan, 165 F.3d 1238, 1242 (9th Cir. 1999) (allowing equitable tolling of plaintiff's sexual harassment claim where psychological incapacity prevented her from timely pursuing the claim); Bureerong v. Uvawas, 922 F. Supp. 1450, 1463 (C.D. Cal. 1996) (allowing equitable tolling of plaintiffs' various claims where the alleged imprisonment at a garment factory that was the basis of the claims prevented them from filing prior to their release); Lewis v. Super. Ct., 175 Cal. App. 3d 366, 380 (1985) ("Language of statutes of limitation must admit to implicit exceptions where compliance is impossible and manifest injustice would otherwise result.").

In determining whether California's equitable tolling doctrine applies, the Court must balance "'the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute.'" Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 371 (2003)).  Courts have applied equitable tolling in "carefully considered situations to prevent the unjust technical forfeiture of causes of action," Lantzy, 31 Cal. 4th at 370, but it should not be applied if it is "inconsistent with the text of the relevant statute." United States v. Beggerly, 524 U.S. 38, 48 (1998).  Equitable tolling may also be proper "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."[6] Stoll, 165 F.3d at 1242.

---

[5] Section 312 of the Code provides that "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." CAL. CIV. PROC. CODE § 312.  The Code expressly prescribes several statutory tolling provisions, including section 351 (absence of defendant from the state); section 352 (minority or insanity of plaintiff); section 352.1 (imprisonment of plaintiff on a criminal conviction); section 353 (death of plaintiff); section 353.1 (disability of attorney); section 354 (state of war); and section 356 (action stayed by injunction or statutory prohibition).

[6] This reasoning of the Ninth Circuit points to a common conflation of two principles of equitable modification of statutes of limitations – equitable tolling and equitable estoppel – purposely blurred to avoid unjust results.  See Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (noting the frequent confusion between "equitable tolling," "fraudulent concealment," and the "discovery rule").  Equitable estoppel focuses on the wrongful conduct of the defendant, where the plaintiff has been induced into failing to file suit, or has reasonably relied on assertions by the defendant that have delayed filing suit.  See Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir.

Courts have found such "extraordinary circumstances" to exist in cases where the plaintiff had been detained civilly or had been subjected to false imprisonment. See, e.g., Jones, 393 F.3d at 929 (noting the rigid application of the limitations period would shield the act of civil confinement from legal challenge by operation of the very act sought to be challenged); Bureerong, 922 F. Supp. at 1463 (holding that equitable tolling was appropriate where plaintiffs were "imprisoned" at a garment-making facility and thus were physically prevented from complying with the statutes of limitations); see also Stoll, 165 F.3d at 1242 (failing to equitably toll limitations statute would have unjustly allowed the defendants "to benefit from the fact that its own admittedly outrageous acts" left the plaintiff "so broken and damaged that she [could not] protect her own rights").

In the present case, Plaintiff's inability to leave Defendants' home resulted in her total incapacity to file suit or pursue any legal rights, and thus her delay was excusable. Additionally, Defendants' alleged misconduct prevented Plaintiff from complying with the statute of limitations. Strict application of the statute of limitations to Plaintiff's claims would allow Defendants to parlay their wrongful acts into legal immunity – exactly the type of unjust forfeiture equitable tolling is designed to obviate. For those reasons, Plaintiff has pled sufficient facts to support equitable tolling of her claims for intentional and negligent infliction of emotional distress. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's fifth and sixth causes of action.

## IV. Is Plaintiff's conversion claim time-barred?

Plaintiff's seventh cause of action alleges conversion based on Defendants' taking and withholding Plaintiff's passport upon her arrival at Defendants' home. (FAC ¶ 46-48.) Defendants

---

2000). Equitable tolling, on the other hand, "does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing," but, rather, "focuses on whether there was excusable delay by the plaintiff." Id. at 1178. Whichever title is more appropriate for the category, the policy consideration of "avoid[ing] unjust application of statutes of limitation," Lewis, 220 Cal. App. 3d at 372, is equally applicable where the plaintiff's failure to meet the statutory deadlines was not for lack of good faith, but because of either plaintiff's excusable ignorance or defendant's misconduct or misrepresentations. Whether the limitations period is "tolled" on behalf of the plaintiff, or whether the defendant is "estopped" from asserting the statute of limitations as a defense may have no difference of effect in many cases, and so failure to distinguish in those cases may not be critical. Furthermore, whether equitable tolling or equitable estoppel, "the trier should consider the extent to which the purposes of the limitations period have been satisfied, notwithstanding the delay in filing." Naton v. Bank of Cal., 649 F.2d 691, 696 (9th Cir. 1981). Because both "excusable ignorance" by Plaintiff and alleged misconduct by Defendants are present here, the Court need not decide which specific doctrine applies in this case.

argue Plaintiff's claim for conversion is time-barred by the three-year statute of limitations. See CAL. CIV. PROC. CODE § 338(c).[7] Defendants contend that Plaintiff alleges the conversion occurred in 2005, and, since Plaintiff did not file her claim until October 13, 2009, the applicable statute of limitations has run on Plaintiff's claim.

Plaintiff argues her claims are not time-barred for two reasons. First, although the initial conversion took place in 2005, the conversion was ongoing because Defendants never returned her passport. Second, equitable tolling should apply to her conversion claim because Plaintiff was confined and unable to pursue legal remedy until her rescue on July 23, 2008.

With regard to Plaintiff's first argument, Plaintiff fails to cite to any cases that would support application of the continuing tort doctrine to a claim for conversion. The continuing tort doctrine is applicable where the conduct is continuing in nature, "where there is 'no single incident' that can 'fairly or realistically be identified as the cause of the significant harm.'" Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (quoting Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984)) (concluding the publication of a book was a single incident in a defamation claim). In contrast, the tort of conversion is marked by a discrete event – the taking of the aggrieved party's property – that is incapable of repetition for that particular claim. See, e.g., Snow v. WRS Group, Inc., 73 Fed. Appx. 2, 4 (5th Cir. 2003) (holding plaintiff's discovery of defendant's obtaining and marketing her photograph was a discrete event prompting accrual of her conversion claim, despite the fact that the marketing continued years afterward); N. Natural Gas Co. v. Nash Oil & Gas, Inc., 506 F. Supp. 2d 520, 527 (D.Kan. 2007) (holding that a claim for conversion accrues when substantial injury first appears or becomes reasonably ascertainable, and that continuing tort doctrine would not preserve a claim where the plaintiff's injury was "definite and discoverable"). Based on the foregoing, the Court

---

[7] Section 338(c) provides that within three years a plaintiff must commence:

> An action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property. The cause of action in the case of theft, as defined in Section 484 of the Penal Code, of any article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved party, his or her agent, or the law enforcement agency that originally investigated the theft.

CAL. CIV. PROC. CODE § 338(c).

1  declines to apply the continuing tort doctrine to Plaintiff's conversion claim.

2  Nonetheless, the Court agrees that equitable tolling applies to Plaintiff's claim for conversion. As discussed above, equitable tolling of the statute of limitations may be proper where "circumstances effectively render timely commencement of action impossible or virtually impossible." Lewis, 175 Cal. App. 3d at 372. In the present case, Plaintiff alleges she was confined to Defendants' house, unable to leave and, consequently, unable to pursue any legal remedies available to her because of circumstances beyond her control. Plaintiff has alleged her confinement to Defendants' home was total and their control over her continuous. (FAC ¶¶ 13-14.) Plaintiff could not pursue her legal remedies until her release from Defendants' control on July 23, 2008. Applying equitable tolling, the present action, filed on October 13, 2009, is well within the three-year statute of limitations. Consequently, the Court **DENIES** Defendants' motion to dismiss as untimely Plaintiff's seventh cause of action.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss in its entirety.

**IT IS SO ORDERED.**

**DATED:  March 4, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**